Psaty & Fuhrman, Inc., Petitioner, *v.* Henry L. Stimson, Secretary of War of the United States of America, Respondent.

Docket No. 26–R.   Promulgated October 19, 1948.

*David Morgulas, Esq.*, for the petitioner.
*William T. Becker, Esq.*, for the respondent.

HILL, *Judge*: We are first confronted with the question (not raised by the pleadings) of whether or not this Court, has jurisdiction to redetermine the amount of petitioner's excessive profits. Although neither party in this proceeding has questioned our jurisdiction, it is fundamental that a court must consider such question if it is suggested by the facts and applicable law. See 21 C. J. S. § 114, and cases cited.

The jurisdiction of this Court in renegotiation proceedings is conferred and limited as provided by section 403 (e) (1) and (2) of the Renegotiation Act of 1943. Subsection (e) (1) provides that:

Any contractor or subcontractor aggrieved by an order of the Board determining the amount of excessive profits * * * may * * * file a petition with The Tax Court of the United States for a redetermination thereof. * * *

Subsection (e) (2), so far as applicable here, provides that:

Any contractor or subcontractor * * * aggrieved by a determination of the Secretary made prior to the date of the enactment of the Revenue Act of 1943, *with respect to a fiscal year ending before July 1, 1943*, as to the existence of excessive profits, * * * may * * * file a petition with The Tax Court of the United States for a redetermination thereof * * *. [Emphasis supplied.]

Subsection (e) (1) is not applicable to the situation here, since the petitioner does not request a redetermination of an order of the Board. Instead, it seeks a redetermination of a final order entered by the Secretary of War, who acted under the Act of 1942. Hence, if this Court has jurisdiction, it must be found within subsection (e) (2).

It is conceded that petitioner was renegotiated properly under the 1942 Act on the completed contract basis. The period of performance of the contract embraced not only a part of the fiscal calendar year 1942, but also a part of the fiscal calendar year 1943. The Renegotiation Act of 1943 specifically authorized the right of redetermination by this Court with respect to a fiscal year ending before July 1, 1943. It did not expressly authorize such redetermination with respect to a fiscal year ending after June 30, 1943.

The contract here was not renegotiated on a basis of segregated fiscal years, and under the Secretary's determination the excessive profits are not segregable for allocation between the fiscal calendar years 1942 and 1943. The fact is, however, that the contract was completely performed, the renegotiation by the Secretary completed, and the determination of excessive profits made within the period of time within which the Secretary could validly make such determination under the 1942 Act. Embraced in that period was the fiscal

calendar year 1942. The determination of excessive profits was, therefore, with respect to a fiscal year ending before July 1, 1943, but not exclusively so. The fact that the determination was an unsegregable entirety on the basis of a completed contract performance covering not only a fiscal year ending before July 1, 1943, but also a part of the fiscal year ending after that date, does not, in our opinion, deprive the petitioner of the right under specific statutory authority to a redetermination by this Court with respect to a fiscal year ending before July 1, 1943, even though such redetermination must, under the circumstances of the instant case, be an unsegregable entirety made on the basis of a completed contract, the performance of which covered an additional period within the succeeding fiscal year. We so hold.

This holding is fortified by the apparent purpose and intent of the Congress, in enacting the Renegotiation Act of 1943, to give the right to a redetermination by this Court in all cases of a unilateral determination of excessive profits either under the Renegotiation Act of 1942 or 1943.

Under the Renegotiation Act of 1942 no right of appeal or review for redetermination of the excessive profits determined by the Secretary was provided. This was a source of considerable complaint from contractors and subcontractors whose contracts fell within the purview of that Act. For example, in the hearings before the Committee of Naval Affairs, H. R., 1st Session, pursuant to H. Res. 30, vol. 2, p. 1254, June 10–30, 1943, the following is stated:

> The Renegotiation law is unfair in that it does not give the contractor any right of appeal from the determinations of the contracting Department. The decisions of the Department can not be reviewed by the courts, and so the Departments are complainant, prosecutor, witness, judge, and jury.

In an effort to take care of complaints such as the above, Congress placed section 403 (e) (1) and (2) in the Renegotiation Act of 1943.

In discussing this section of the Act during the debate in the House, Representative Wesley E. Disney, a member of the Committee on Ways and Means, stated (89 Cong. Rec. 9930):

> The plan worked out by the Committee gives *every man* a right to assert his rights under the Constitution in case he avails himself of its protection.
> The Committee has provided that *any contractor aggrieved by a determination of excessive profits under the old law* [Act of 1942], whether he was cooperative and signed a closing agreement or not, may have a review of that determination in The Tax Court of the United States and in the review have all issues, constitutional and otherwise, decided by the Court. * * *
> Having arrived at the conclusion that those contractors who had been renegotiated on contracts prior to April 28, 1942, might have an appeal to The Tax Court, fairness compels us to give *this right to all contractors* notwithstanding they may have signed closing agreements, so that they all have the same right of appeal. [Emphasis supplied.]

The House of Representatives stated through its committee report, H. R. No. 871, 78th Cong., 1st sess., p. 76, with respect to the section in question as follows:

Under existing law there is no right of appeal or review whereby the contractor may have the question of his excessive profits redetermined. Your committee's bill establishes this right *both as to renegotiation adjustments already made and renegotiation adjustments in contracts entered into after June 30, 1943,* the effective date of renegotiation procedure under the newly established War Contracts Price Adjustment Board. [Emphasis supplied.]

It is apparent from these statements that it was clearly the purpose of Congress in writing section 403 (e) (2) into the Renegotiation Act of 1943 to provide contractors or subcontractors renegotiated under the Act of 1942 the right in all cases to a redetermination by this Court. Judge L. Hand, speaking for the Circuit Court in *Cabell* v. *Markham*, 148 Fed. (2d) 737, 739, stated as follows with respect to considering Congressional purpose when construing statutes:

\* \* \* The defendants have no answer except to say that we are not free to depart from the literal meaning of the words, however transparent may be the resulting stultification of the scheme or plan as a whole.

Courts have not stood helpless in such situations; the decisions are legion in which they have refused to be bound by the letter, when it frustrates the patent purpose of the whole statute [citing numerous supporting authorities]. \* \* \* Of course it is true that the words used, even in their literal sense, are the primary, and ordinarily the most reliable, source of interpreting the meaning of any writing; be it a statute, a contract, or anything else. But it is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary; but to remember that statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning. \* \* \*

So in this proceeding, to carry out the obvious purpose of Congress, we hold that our jurisdiction embraces the determination of the Secretary before us.

We therefore shall consider the question raised by the pleadings: Should petitioner's contract which was renegotiated by the Secretary of War on February 7, 1944, on a completed contract basis under authority of the Renegotiation Act of 1942, have been renegotiated on a fiscal year basis? Solution of this problem lies in the interpretation and construction of the related sections of the Renegotiation Acts of 1942 and 1943. We believe the question must be answered in the negative.

On February 7, 1944, when the Secretary of War entered his unilateral determination that petitioner's profits were excessive in the amount of $700,000, he was acting under the provisions of the Renegotiation Act of 1942. Under that act the Secretary was not required to renegotiate contracts on a fiscal year basis; it was there provided that he "may renegotiate to eliminate excessive profits on some or all of such contracts and subcontracts as a group without separately renegotiating

the contract price of each contract or subcontract." Sec. 403 (c) (1). See *J. H. Sessions & Sons* v. *Secretary of War*, 6 T. C. 1236; *Stein Bros. Manufacturing Co.* v. *Secretary of War*, 7 T. C. 863. In this case the Secretary found it more convenient and desirable to renegotiate on a completed contract basis. There is no evidence in the record, nor does the petitioner contend, that the Secretary of War acted arbitrarily or capriciously or beyond his powers in so doing, under the authority of the Act of 1942.

Petitioner argues, however, that the Renegotiation Act of 1943 and related regulations provide that for the year involved ended after June 30, 1943, "Petitioner is entitled to have itself renegotiated on a fiscal year basis." It is true that that act provides that contracts for fiscal years ending after June 30, 1943, should be renegotiated on a fiscal year basis. See sec. 403 (c) (1) and (6). The Renegotiation Act of 1943, however, did not become law until February 25, 1944. Seventeen days prior to that date the amount of excessive profit on the contract herein involved had been determined finally by the then Secretary of War in accordance with the provisions of the Renegotiation Act of 1942. The Act of 1943 did not provide for a reopening of final determinations of Secretaries acting under authority of the Act of 1942 by the War Contracts Price Adjustment Board. It is thus clear that the Renegotiation Act of 1943 has no effect on the question of what basis of renegotiation should be used in determining or redetermining the amount of excessive profits on the contract before us.

The petitioner contends that the Joint Statement by the War, Navy, and Treasury Departments and the Maritime Commission, dated March 31, 1943, compels the result that the contract should have been renegotiated on a fiscal year basis. In the first place, this Court need not yield to the administrative interpretations of the Secretaries. See *Spray Cotton Mills* v. *Secretary of War*, 9 T. C. 824. In addition, the statement does not support petitioner's argument. It reads in part as follows:

9. Over-all renegotiation; Cost-plus-fixed-fee contracts—Renegotiation on the basis of the over-all profit on the war contracts of a contractor or subcontractor for a specified period was not expressly authorized by the original statute and was adopted by the Department as a matter of policy. This method is now authorized by the statute, as amended, which expressly provides for renegotiation of contracts and subcontracts as a group without separately renegotiating the contract price of each contract or subcontract. The *statute also contains, however, the original provision for renegotiation by individual contracts, and in some instances the Secretaries have found that method more convenient in actual practice.* Under renegotiation on an over-all basis, excessive profits are determined by a study of a contractor's financial position and the profits, past and prospective, from his contracts and subcontracts taken as a whole for a particular fiscal year or other period rather than by analyzing each individual contract or subcontract on a unit cost basis. [Emphasis supplied.]

It will be noted from the above that the joint statement emphasizes the fact that the Act of 1942 did not mandatorily establish any basis of renegotiation.

The petitioner further urges, however, that Congress provided that a proceeding before the Tax Court "shall be treated as a proceeding de novo" and therefore that:

\* \* \* This Court must consider the rights of the contractor to renegotiate on a fiscal year basis as if all proceedings had been instituted after the enactment of the February 24th, [sic] 1944 amendment which specifically invested this Court with jurisdiction over renegotiation and specifically provided for renegotiation on a fiscal year basis with respect to any fiscal year ending after June 30th 1943.

As the petition filed in this proceeding is one based upon an order of the Secretary of War, who determined the amount of excessive profits under the Act of 1942, we can not look to the Act of 1943 to ascertain wherein it was "aggrieved." There is no provision in the Act of 1943, either expressly or implicitly, authorizing this Court to do so. If we considered the provisions of the Act of 1943 to determine the amount of petitioner's excessive profits, this Court would be making the initial determination of such profits under that Act, a function vested exclusively by the Act of 1943 in the War Contracts Price Adjustment Board. The use of the term "de novo" in the statute does not give us authority to use the Act of 1943 in redetermining the amount of excessive profits validly and finally determined under the Act of 1942.

In view of the above and in accordance with the stipulation, we hold that petitioner's profits on the contract involved were excessive to the extent of $700,000.

Reviewed by the Court.

*An order will be entered in accordance herewith.*