HAROLD F. BUCK, PETITIONER, *v.* WAR CONTRACTS PRICE ADJUSTMENT
BOARD, RESPONDENT.

Docket No. 449–R.   Promulgated April 15, 1948.

*C. J. Batter, Esq.*, for the petitioner.
*Robert H. Winn, Esq.*, for the respondent.

### OPINION.

TURNER, *Judge*: This proceeding is now before the Court on the
petitioner's motion for judgment on the pleadings.

Under date of December 1, 1943, a letter was mailed to the petitioner,
signed by Morton J. Stone, Lieutenant Commander, USNR, Acting
Chief, Services and Sales Renegotiation Section, Navy Department.
Portions of the letter here pertinent read as follows:

Information received in this office indicates that the profits realized or likely
to be realized by your organization for your fiscal years 1942 and 1943 may be
excessive.

This notice constitutes commencement of renegotiation with your organization
pursuant to said Act.   You are required (1) to acknowledge such commencement
by executing and returning to this office not later than December 10, 1943 the
enclosed "Acknowledgment of Commencement of Renegotiation" and (2) to
complete and file with this office not later than December 20, 1943 the information
called for by the enclosed "Standard Form of Contractor's Report."

The pleadings show no facts as to any further notices, the dates of **any** conferences held, or whether or when the petitioner completed and filed the information called for.

What occurred thereafter with respect to 1942 is not shown and 1942 is not here involved. With respect to 1943, however, an order was entered on September 28, 1945, by Lewis S. Munson, Jr., Lieutenant Commander, USNR, Vice Chief, Services and Sales Renegotiation Section, Navy Department, as delegatee of the War Contracts Price Adjustment Board, fixing 'the excessive profits of the petitioner at $18,950.61. No review by the Board of this determination having been requested and the Board not having initiated review on its own motion, the Board on January 15, 1946, by registered mail, mailed to petitioner notice of its determination that petitioner had realized excessive profits on war contracts for the said year in the amount found by its delegatee.

It is the claim of the petitioner that the letter of December 1, 1943, constituted the commencement of renegotiation within the meaning of section 403 (c) of the Renegotiation Act,[1] as amended by the Revenue Act of 1943, and that the order of unilateral determination made under delegated authority on September 28, 1945, having been made more than one year from December 1, 1943, he is discharged of all liabilities for excessive profits under his contracts for the year ended December 31, 1943. The Revenue Act of 1943 did not become law

---

[1] SEC. 403 (c). (1) Whenever, in the opinion of the Board, the amounts received or accrued under contracts with the Departments and subcontracts may reflect excessive profits, the Board shall give to the contractor or subcontractor, as the case may be, reasonable notice of the time and place of a conference to be held with respect thereto. The mailing of such notice by registered mail to the contractor or subcontractor shall constitute the commencement of the renegotiation proceeding. * * *

 *          *          *          *          *          *          *

(3) No proceeding to determine the amount of excessive profits shall be commenced more than one year after the close of the fiscal year in which such excessive profits were received or accrued, or more than one year after the statement required under paragraph (5) is filed with the Board, whichever is the later, and if such proceeding is not so commenced, then upon the expiration of one year following the close of such fiscal year, or one year following the date upon which such statement is so filed, whichever is the later, all liabilities of the contractor or subcontractor for excessive profits received or accrued during such fiscal year shall thereupon be discharged. If an agreement or order determining the amount of excessive profits is not made within one year following the commencement of the renegotiation proceeding, then upon the expiration of such one year all liabilities of the contractor or subcontractor for excessive profits with respect to which such proceeding was commenced shall thereupon be discharged, except that (A) if an order is made within such one year by the Secretary (or an officer or agency designated by the Secretary) pursuant to a delegation of authority under subsection (d) (4), such one-year limitation.shall not apply to review of such order by the Board, and (B) such one-year period may be extended by mutual agreement.

 *          *          *          *          *          *          *

(5) (A) Every contractor and subcontractor who holds contracts or subcontracts, to which the provisions of this subsection are applicable, shall, in such form and detail as the Board may by regulations prescribe, file with the Board on or before the first day of the fourth month following the close of the fiscal year (or if such fiscal year has closed on the date of the enactment of the Revenue Act of 1943, on or before the first day of the fourth month following the month in which such date of enactment falls), a financial statement setting forth such information as the Board may by regulations prescribe as necessary to carry out this section.

until February 25, 1944, almost three months after the mailing of the letter of December 1, 1943.   The petitioner must of necessity, however, rest his contention upon the Renegotiation Act as so amended, since, from and after enactment, it is the law of renegotiation of war contracts for all years ending after June 30, 1943,[2] and by its terms established, for the first time, a period within which renegotiation proceedings, once commenced, must be concluded and without which the petitioner has no point at all.   There is still no such limitation on the period of completion of renegotiation proceedings, once commenced, for fiscal years ending on or before June 30, 1943.   Accordingly, the provisions of the Renegotiation Act as they existed prior to amendment on February 25, 1944, and which are still applicable to years ended on or before June 30, 1943, are of interest only to the extent that they may supply the backdrop for things done prior to the amendment of February 25, 1944, or throw some light on the meaning or intent of Congress as expressed in the amended statute.

By section 403 (c) (1) of the act, prior to amendment, it was provided that the Secretary of a Department, whenever in his opinion the profits realized or likely to be realized from any contract with such Department might be excessive, was authorized and directed to require the contractor to renegotiate the contract price.   In section 403 (c) (6) it was provided that no renegotiation should be commenced more than one year after the close of the fiscal year within which completion or termination of the contract occurred.   By section 403 (c) (5), however, it was provided that the contractor might start the running of a period of limitation as to commencement of renegotiation by filing statements of actual costs of production and such other financial statements as might be prescribed by regulation, in which case the Secretary, if he was of the view that the profits might be excessive, and within one year of the filing of the costs and financial statements was to give notice of a date and place for an initial conference to be held within sixty days thereafter, and if such notice was not given and renegotiation was not commenced by the Secretary within such sixty days, the contractor was not thereafter to be required to renegotiate his contract or contracts for such fiscal year or years. It is to be noted that, while the statute did contain a limitation on the period within which renegotiation proceedings were required to be commenced, it contained no provision as to what act or acts should constitute the commencement of renegotiation, nor did it contain any limitation on the period within which renegotiation once commenced might be concluded.   In this situation, the War, Navy, and Treasury Departments and the Maritime Commission on March 31, 1943, issued a joint statement with respect to the commencement of renegotiation, referring particularly to the one-year limitation on commencement of

---

[2] See section 701 (d) of the Revenue Act of 1943.

a renegotiation proceeding as prescribed by section 403 (c) (6). The statement was:

\* \* \* The Departments interpret this provision to mean that renegotiation commences on the specific date set by the Department conducting renegotiation for the initial renegotiation conference unless otherwise agreed to by the contractor.

Approximately two months later, on May 27, 1943, the Departments amended that part of the joint statement previously issued relating to their interpretation of the meaning of commencement of renegotiation, the new provision reading as follows:

\* \* \* The Departments interpret this provision to mean that renegotiation commences at the time of the institution of proceedings to obtain the information which is to be used as a basis for the determination of excessive profits.

But for the fact that this interpretation of the term "commenced" apparently was related to the limitation prescribed by section 403 (c) (6), it might well have been regarded as being in conflict with the provisions of section 403 (c) (5),[3] wherein it is apparent that in situations where a contractor voluntarily filed costs and financial statements, as prescribed by regulation, Congress rather obviously had in mind that the commencement of renegotiation in such cases not only followed the filing of the information and data which was to be used as the basis for renegotiation, but was to be either the issuance of the notice for initial hearing or conference, or the holding of the initial hearing or conference pursuant to such notice.

By the Revenue Act of 1943, Congress completely rewrote the limitations provisions of the Renegotiation Act for all years ending after June 30, 1943, which includes the year herein, that year being the year ended December 31, 1943. With respect to the years ended after June 30, 1943, Congress spoke directly and specifically on the matters above outlined and as to which the Departments previously invested with powers and duties of renegotiation of war contracts for all years had not been consistent in their interpretation of what constituted the commencement of renegotiation within the meaning of the statute.

---

[3] SEC. 403 (c). (5) Any contractor or subcontractor who holds contracts or subcontracts, to which the provisions of this section are applicable, may file with the Secretaries of all the Departments concerned statements of actual costs of production and such other financial statements for any prior fiscal year or years of such contractor or subcontractor, in such form and detail, as the Secretaries shall prescribe by joint regulation. Within one year after the filing of such statements, or within such shorter period as may be prescribed by such joint regulation, the Secretary of a Department may give the contractor or subcontractor written notice, in form and manner to be prescribed in such joint regulation, that the Secretary is of the opinion that the profits realized from some or all of such contracts or subcontracts may be excessive, and fixing a date and place for an initial conference to be held within sixty days thereafter. If such notice is not given and renegotiation commenced by the Secretary within such sixty days the contractor or subcontractor shall not thereafter be required to renegotiate to eliminate excessive profits realized from any such contract or subcontract during such fiscal year or years and any liabilities of the contractor or subcontractor for excessive profits realized during such period shall be thereby discharged.

As to years ended on or prior to June 30, 1943, Congress did not change the statute, thereby indicating that as to those years it did not desire to disturb the interpretation then being made by the Departments. With respect to all years ending after June 30, 1943, such was not the case. First, the powers and duties of renegotiation were taken from the various Departments and agencies and placed in a newly created War Contracts Price Adjustment Board. Next, the duty and obligation on the part of a contractor to file costs and financial statements was not left open to doubt, it being provided in section 403 (c) (5) that every contractor who holds contracts or subcontracts shall, on or before the first day of the fourth month following the close of the fiscal year, file with the Board a financial statement setting forth such information as the Board by regulations prescribed as necessary for carrying on the renegotiation proceeding. Congress then combined the one year period of limitation for commencement of renegotiation proceedings previously covered by section 403 (c) (6) of the act prior to amendment with that bottomed upon the voluntary filing under section 403 (c) (5) of costs and financial statements by the contractor by providing in section 403 (c) (3) and 403 (c) (5) of the statute as amended, that a proceeding to determine the amount of excessive profits must be commenced within one year after the close of the fiscal year in which the excessive profits were received or accrued, or within one year after the filing of the financial statement required by section 403 (c) (5), whichever is later. It was further provided, and for the first time, in section 403 (c) (3), that the period within which renegotiation, once commenced, must be concluded is one year from the commencement of the renegotiation proceedings. With respect to what should be regarded as constituting the commencement of renegotiation for the years ending after June 30, 1943, Congress was specific and did not leave the matter, as it had prior thereto, to interpretation by the renegotiating authority. It provided by section 403 (c) (1) that whenever, in the opinion of the Board, the amounts received or accrued under war contracts may reflect excessive profits, the Board shall give the contractor reasonable notice of the time and place of a conference to be held with respect thereto and that the mailing of such notice, by registered mail, "shall constitute the commencement of the renegotiation proceeding." It is thus apparent that here we have the converse of the rule that where a statute is reenacted without change, a regulation of long standing which interprets the statute must be regarded as having been approved by Congress in the reenactment of the statute. See *Helvering* v. *Reynolds Tobacco Co.*, 306 U. S. 110. Here, Congress not only did not reenact the statute without alteration, but made definite and drastic changes, and the petitioner seeks to invoke those provisions favorable to its contention and to ignore those that are unfavorable.

We are not willing to presume that the drafters of the amended act or that Congress, in enacting the amended provisions, was not aware of the different interpretations the Departments had made of what should, under the statute as it then existed, constitute the commencement of renegotiation, or that the current interpretation was that the institution of proceedings to obtain the information which should be used as a basis for the determination of excessive profits was to be regarded as the commencement of renegotiation. Neither are we willing to presume that Congress, when, for the first time and for all of the years ending after June 30, 1943, it placed a limitation of one year on the period within which the Board must complete renegotiation once commenced and prescribed that the mailing, by registered mail, of the notice of a time and place of conference constituted "the commencement of the renegotiation proceeding," intended that for any such year the making of a request for submission of data and information on which the renegotiation might be based, was likewise to constitute the commencement of renegotiation which would start the running of the newly established limitation period as to completion thereof. To the contrary, we think that all of these facts plainly show that for the purpose of starting the newly established period of limitation applicable to years ending after June 30, 1943, Congress did not intend that a request for data and information was to be regarded as the commencement of renegotiation. We think it significant in that respect that for contract years ended on or prior to June 30, 1943, Congress did not change the law and did not therefore disturb the regulation of the Departments, to the effect that the request for data and information should be regarded as the commencement of renegotiation. As to those years, Congress did not establish any period of limitation on the time within which the Government must complete a renegotiation proceeding once commenced. If it had intended, in such circumstances, that the request for data and information should likewise constitute the commencement of renegotiation for years ended after June 30, 1943, for the purpose of starting the running of the newly established limitation on completion, it could easily have said so, or by reenacting existing provisions without change, given its approval to the current regulation. As it is, the specific legislation negatives such a thought.

The petitioner cites *Stein Brothers Manufacturing Co.*, 7 T. C. 863, arguing that the rationale of that case requires a decision in his favor. In the *Stein* case, both the law and the facts were quite different from those in this case. The period involved was the nine months ended September 30, 1942, and the statute applicable for that period was the same as that which is still applicable to all years ending on or prior to June 30, 1943. The petitioner was arguing

that renegotiation had never legally commenced, because the Secretary, within one year after the filing of statements of costs of production and other financial data, had never given written notice fixing a date and place for an initial conference to be held within sixty days thereafter. The petitioner was seeking to invoke the provisions of section 403 (c) (5) of the act applicable to years ending on or prior to June 30, 1943, a provision not applicable here, and which gave a contractor the privilege or right to start the running of a period of limitation on commencement of renegotiation by voluntarily filing statements of costs and other financial data. The facts disclosed that the said statements were not voluntarily filed and that long prior to the filing of the statements various renegotiation conferences had already been held and renegotiation had in fact commenced. On such facts, it was held that section 403 (c) (5) was not controlling as to the commencement of renegotiation, the financial data not having been voluntarily filed, and further, that renegotiation having in fact been commenced through the holding of various renegotiation conferences, the sending of a notice fixing "a date and place for an initial conference" would have been meaningless. It was accordingly held that the petitioner was in error in its contention that renegotiation had not commenced within the meaning of the Renegotiation Act, merely because the notice required under section 403 (c) (5), where statements of costs and other financial data are voluntarily filed, had not been sent. Under the statute here, the filing of statements of costs and other financial data was mandatory, the contractor having three months following the close of the fiscal year within which to file such statements, and the War Contracts Price Adjustment Board has until one year after the close of the fiscal year or the date of the filing of the said statements, whichever is later, within which to commence renegotiation. In the instant case, the fiscal year did not end until thirty days after the mailing of the letter requesting data and financial information; and we are not shown when such data and information were in fact filed. Neither do we know when notice of the time and place of the initial conference was sent; nor when that conference was actually held. When we have a case bottomed on the actual holding of a renegotiation conference as the commencement of renegotiation, and a showing that no notice, under section 403 (c) (1) of the statute here applicable, was mailed, then it may be necessary to determine the applicability of the reasoning in *Stein Brothers Manufacturing Co.* We have no such case here.

*Spray Cotton Mills*, 9 T. C. 824, is not in point. The profits there involved were for the calendar year 1942 and the provisions of the statute which are here controlling were not applicable. Sec. 701 (d), Revenue Act of 1943.

It is accordingly our conclusion, in the circumstances here, that the mailing of the letter of December 1, 1943, by the Navy Department, did not constitute the commencement of renegotiation of this petitioner's profits for the year 1943, within the meaning of sections 403 (c) (1) and (3) of the Renegotiation Act, applicable hereto.

The petitioner's motion for judgment will be denied by appropriate order.

Reviewed by the Court.

---

MURDOCK, J., dissenting: The theory of the majority is that the petitioner must show a commencement by the mailing of a registered notice of the time and place of a conference, as specified in one paragraph of the amendment of February 25, 1944, in order to benefit from the limitation upon determination fixed by another paragraph of that amendment. The reasoning in support of that theory has much to recommend it, but I favor the conclusion that the provision placing a limitation upon determination should not be construed as inapplicable to renegotiation proceedings properly and clearly commenced, but still incomplete, at the time the amendment was enacted.

The majority opinion points out that the changes in the law made by the amendment of February 25, 1944, apply to the renegotiation of all war contracts for years ending after June 30, 1943, but do not apply to the renegotiation of war contracts for fiscal years ending on or before that date. Thus, they apply retroactively to war contractors with fiscal years ending with any one of the seven months preceding February 1944. Congress must have known that it was not only possible, but probable, that renegotiation of some of those contractors had already commenced under the law as it existed prior to the amendment. It could easily have excluded such cases had it intended the limitation upon determination not to apply, absent a new notice sent by registered mail fixing a time and place for a conference. Obviously, the renegotiators would not send a new notice by registered mail fixing a time and place for a conference. That would be wholly unnecessary and rather ridiculous where renegotiation had already commenced and perhaps one or more conferences had already taken place. The net result would be that the limitation on determination would not apply to such cases and, in this respect, it would be just like those for periods ending on or prior to June 30, 1943. If that was the result which Congress desired, it seems strange that it made the limitation amendment at all retroactive. That Congress was not wholly unaware of the necessity for special provisions relating to fiscal years covered by the amendment but already closed before its enactment, is shown by the parenthetical provision in section 403 (c) (5) (A).

Renegotiation in the present case was actually commenced before

the enactment of the amendment. I think it was commenced for all purposes, including the purpose of the limitation contained in section 403 (c) (3). This interpretation places no undue hardship upon the renegotiators. Time for action by them in no case could have expired at the time of the enactment of the amendment, but, on the contrary, they would have had time to act in all cases because section 403 (c) (3) excepts from the limitation provision cases in which the parties have extended the period of limitation by mutual agreement and cases in which the Secretary makes an order within the one-year period. Thus, if the contractor was unwilling to agree to extend the limitation period for determination in any proceeding already commenced under the law prior to the amendment, the Secretary could make what might be termed an emergency order, to keep the case open for later consideration by the Board.

The delegatee entered his order on September 28, 1945, almost one year and ten months after the commence notice of December 1, 1943, and one year and seven months after the date upon which the amendment became law. There was a limitation upon commencement of renegotiation prior to that amendment and the Secretary took care to avoid the effect of that limitation by commencing renegotiation in the case of this contractor. His act saved the renegotiation under the then existing law, but the majority hold that it did not commence renegotiation within the meaning of the law as amended—a strange result. There is nothing in the amendment which specifically requires that result and I would not reach it by inferring, as does the majority, that the only commencement which Congress had in mind for the purpose of the limitation upon determination contained in section 403 (c) (3) was the commencement provided in the amendment to section 403 (c) (1).

ARUNDELL, VAN FOSSAN, and BLACK, *JJ.*, agree with this dissent.