## MAGUIRE INDUSTRIES, Inc. v. SECRETARY OF WAR.

### No. 10292.

United States Court of Appeals
District of Columbia Circuit.

Decided Nov. 2, 1950.

Mr. Henry Epstein, of the Bar of the Court of Appeals of New York, New York City, pro hac vice, by special leave of Court, with whom Mr. Eugene Daniel Powers, New York City, was on the brief, for petitioner.

Mr. Marvin E. Frankel, Attorney, Department of Justice, of the Bar of the Court of Appeals of New York, Washington, D. C., pro hac vice, by special leave of Court, with whom Assistant Attorney General H. G. Morison and Messrs. Newell A. Clapp, Paul A. Sweeney, and Julian R. Wilheim, Attorneys, Department of Justice, Washington, D. C., were on the brief, for respondent.

Before EDGERTON, CLARK, and KIMBROUGH STONE,* Circuit Judges.

EDGERTON, Circuit Judge.

Petitioner Maguire Industries, Inc., formerly Auto-Ordnance Corporation, maker of the Thompson sub-machine gun or Tommy gun, asks review of the Tax Court's dismissal, for lack of jurisdiction, of a petition for redetermination of petitioner's excessive profits from war contracts with the United States.

On August 7, 1942 petitioner agreed with the Secretary of War to return to the government $6,000,000 of profits "realized, or likely to be realized" by petitioner "during the fiscal year ending October 31, 1942." As this agreement was made during the fiscal year it necessarily involved a prediction. Accordingly it provided that the Secretary might "reopen the renegotiation" if there proved to be a substantial variance between estimated and actual profits for the last six months of the fiscal year, "but such negotiation shall relate only to such variance, if any * * *" After the end of the fiscal year the Secretary found a substantial variance and reopened the renegotiation. No new agreement was reached. On March 26, 1945 the Secretary made a unilateral determination that "$750,000 of the profits realized by the Contractor during the period from May 1, 1942 to October 31, 1942 * * * are excessive. That said sum of $750,000 so determined to be excessive is in addition to the sums otherwise specified to be returned * * *."

* Sitting by designation.

Petitioner filed in the Tax Court a petition for redetermination of its excessive profits. The Tax Court, four judges dissenting, ruled that the Secretary's determination of March 26, 1945 was not a determination "with respect to any fiscal year" and that the Tax Court lacked jurisdiction to review it.

As amended February 25, 1944 by the Revenue Act of 1943, the Renegotiation Act authorizes the Tax Court to review unilateral determinations of excessive profits on war contracts. The Act deals separately with fiscal years ending after, and before, the middle of 1943. "To the extent of amounts received or accrued * * * in any fiscal year ending after June 30, 1943," § 403(c) (6), 58 Stat. 85, 50 U.S.C.A. Appendix, § 1191(c) (6), it provides for review by the Tax Court of determinations made by the War Contracts Price Adjustment Board. Section 403(e) (1), 58 Stat. 86, 50 U.S.C.A. Appendix, § 1191(e) (1). With respect to earlier fiscal years, it provides for review by the Tax Court of determinations made by the Secretary. Any contractor aggrieved by a unilateral determination of excessive profits by the Secretary, "with respect to a fiscal year ending before July 1, 1943, * * * may * * * file a petition with The Tax Court of the United States for a redetermination thereof * * *" § 403(e) (2), 58 Stat. 87, 50 U.S.C.A. Appendix, § 1191 (e) (2).

 We think Congress provided a comprehensive scheme, which covers this case, for Tax Court review of unilateral determinations of excessive profits. In our opinion the Secretary did make a determination "with respect to a fiscal year ending before July 1, 1943," within the meaning of those words in the statute. Action that affects a part affects the whole and, in many contexts, may be said to be done "with respect to" the whole. The quoted phrase seems to us appropriate in the present context. The Secretary's redetermination not only affects petitioner's fiscal year but affects it in a large and direct way. The agreement of August 7, 1942 had fixed the amount of petitioner's excessive profits for its "fiscal year ending October

31, 1942" at $6,000,000 and had made a limited provision for renegotiation. After renegotiation failed the Secretary found, by his unilateral determination of March 26, 1943, that petitioner had made excessive profits of $750,000 "in addition to" the $6,000,000. The fact that this addition to the figure for the fiscal year was made because of petitioner's profits for the second half of the fiscal year seems to us immaterial to the present point. It does not prevent the Secretary's decision that petitioner's excessive profits for the fiscal year were $750,000 more than $6,000,000 from being "a determination * * * with respect to a fiscal year ending before July 1, 1943." The Act does not make it a condition of review by the Tax Court that the Secretary's determination be due to profits of each day, each month, each quarter, or each half of the fiscal year to which it relates.

In our opinion the Tax Court erred in dismissing the petition for lack of jurisdiction.

Reversed.