NATIONAL BUILDERS, INC., B. H. STAHR COMPANY, A. HEDENBERG & COMPANY, INC., AS JOINT VENTURERS, PETITIONERS, *v.* SECRETARY OF WAR, RESPONDENT.

Docket No. 165–R. Promulgated May 31, 1951.

*Orin M. Oulman, Esq.*, for the petitioners.
*John F. Wolf, Esq.*, for the respondent.

1222

## OPINION.

HARRON, *Judge:* In the petition, the petitioners allege, *inter alia,* that the respondent erred in including in the fiscal year which ended before June 30, 1943, contract payments which were received in a fiscal year which ended after June 30, 1943, having reference to the Government's payment of $362,778.33 on August 16, 1943. On brief, the petitioners, in reliance upon the provisions of section 403 (c) (1) and (6) of the Renegotiation Act as amended by section 701 (b) of the Revenue Act of 1943, which was enacted on February 25, 1944, contend, in effect, that the Secretary of War did not have authority to make a renegotiation determination with respect to amounts received in a fiscal year which ended after June 30, 1943; that the War Contracts Price Adjustment Board was the agency of the Government which became authorized to renegotiate and make determinations with respect to amounts received in a fiscal year ending after June 30, 1943; and that by virtue of the 1943 amendments of the Renegotiation Act, *the authority of the Secretary of War to make any renegotiation determination with respect to the contract between the petitioners and the Government was restricted to the amounts received by the petitioners in their fiscal year ended prior to June 30, 1943.*

The petitioners contend, also, that the Renegotiation Act is unconstitutional, that they did not realize excessive profits. In view of the conclusions which we reach under the chief questions, it is unnecessary to consider the other contentions of the petitioners.

The respondent contends, *inter alia,* that the petitioners were properly renegotiated on a single contract basis by the Secretary of War. He relies upon section 403 (c) (1) of the Sixth Supplemental National Defense Appropriations Act, prior to the 1943 amendments, which is sometimes called the 1942 Renegotiation Act, which was enacted on April 28, 1942.[1] He takes the position that since the Secretary of War

---

[1] Sec. 403 (c). The Secretary of each Department is authorized and directed, whenever in his opinion excessive profits have been realized, or are likely to be realized, from any contract with such Department or from any subcontract thereunder (1) to require the contractor or subcontractor to renegotiate the contract price, * * *

commenced renegotiation of the contract in question prior to the enactment of the Revenue Act of 1943 which, as above set forth, amended the 1942 Renegotiation Act with respect to the matter of renegotiation on a fiscal year basis, those amendments are not applicable to the renegotiation of the profits realized by the petitioners, and that the 1943 provisions of the Act should not be considered by this Court. He relies upon *Psaty & Fuhrman, Inc.* v. *Secretary of War*, 11 T. C. 638. Further relying upon the *Psaty & Fuhrman, Inc.*, case and upon section 403 (e) (2) of the Act as amended by section 701 (b) of the 1943 Revenue Act, the respondent, on brief, raises a limited question about the jurisdiction of this Court. The respondent contends that this Court should approve the respondent's first contention that he properly renegotiated profits on a single contract basis, because unless this Court does so, it will follow that this Court lacks jurisdiction because the Secretary of War *did not make a determination with respect to a fiscal year* ending before July 1, 1943, as to the existence of excessive profits. Section 403 (e) (2), in pertinent part, is set forth in the margin.[2]

From the foregoing, it is evident, and the foregoing is set forth to demonstrate, that there is confusion in the respective arguments on brief of the parties. This is due to failure to plead one essential issue properly. The petition does not contain "Proper allegations showing jurisdiction in the Court." See Rules of Practice before the Court, Rule 64. Lacking such pleading, the parties have failed to join squarely an issue relating to jurisdiction. Under the Court's rule, the petition shall contain, *inter alia*, proper allegations showing jurisdiction of the Court. The petitioners omitted this primary pleading, but the respondent raised no question or objection. Both parties have proceeded in their pleadings upon an assumption which presumes that this Court has jurisdiction, but on brief the respondent suggests that the Court lacks jurisdiction, while the petitioners argue that it is unimportant "what basis the Secretary used in determining that there were excessive profits. The Tax Court has the power to use the proper basis" because on appeal to the Tax Court it may make "a redetermination of excessive profits *de novo*."

As we have had the occasion to point out before, jurisdiction is not a matter which can be agreed to by the parties to a proceeding in this

---

[2] Sec. 403 (e) (2). Any contractor or subcontractor * * * aggrieved by a determination of the Secretary made prior to the date of the enactment of the Revenue Act of 1943, with respect to a fiscal year ending before July 1, 1943, as to the existence of excessive profits, which is not embodied in an agreement with the contractor or subcontractor, may, within ninety days * * * after the enactment of the Revenue Act of 1943, file a petition with the Tax Court of the United States for a redetermination thereof, and any contractor or subcontractor aggrieved by a determination of the Secretary made on or after the date of the enactment of the Revenue Act of 1943, with respect to any such fiscal year, as to the existence of excessive profits * * *, may, within ninety days * * * after the date of such determination file a petition with the Tax Court of the United States for a redetermination thereof. * * *

Court. If the question is overlooked or misconceived by the parties, this Court nevertheless must consider whether it has jurisdiction under statutory provisions. *Maguire Industries, Inc.* v. *Secretary of War*, 12 T. C. 75, 80; reversed on another phase of the jurisdiction question, 185 F. 2d 434 (C. A. D. C., 1950). See *Martha M. Hanify*, 21 B. T. A. 379; *Mohawk Glove Corporation*, 2 B. T. A. 1247; *D. L. Blackstone*, 12 B. T. A. 456. We must, therefore, consider the question of jurisdiction, after consideration of the basic question, which is the validity of the Secretary of War's renegotiation determination on the basis of a single contract.

The amendments of section 403 (a) of the Renegotiation Act which were made by section 701 of the 1943 Revenue Act with respect to the authority of a "Secretary" to renegotiate profits, and with respect to the renegotiation authority of the War Contracts Price Adjustment Board are clear, and no extended discussion of them is necessary. But it is necessary to clarify a point about which the petitioners seem to be confused. The petitioners argue that the Secretary of War has renegotiated profits on the basis of their fiscal year ended on March 31, 1943, and that he has taken the view that they accrued in that fiscal year the final payment which was made on August 16, 1943, in their 1944 fiscal year. There is evidence in this proceeding that *prior to the respondent's final determination*, during the renegotiation proceedings, a subordinate of the respondent advised the petitioners that the Bureau of Internal Revenue had taken the position, for tax purposes, that the contract was completed in the 1943 fiscal year "on the basis of accrual accounting." The petitioners contested that view of the Commissioner of Internal Revenue in a tax proceeding in this Court, *National Builders, Inc.*, 12 T. C. 852 (1949), where we held that the Commissioner erred in his reallocation of petitioners' 1944 income to the earlier fiscal year under a "hybrid" accounting method, and that "the income of the joint venture for the taxable years 1943 and 1944 may be properly determined under the cash receipts and disbursements system of accounting it used in those years." It appears that because of the determination made by the Commissioner of Internal Revenue which gave rise to a tax proceeding, the petitioners *have assumed* that *an undisclosed reason* for the determination of the Secretary of War for his final determination of December 21, 1944, is that he, as well as the Commissioner of Internal Revenue, has made his determination on the basis that the final payment under the contract was accrued by them in their 1943 fiscal year. Such assumption finds no support in this proceeding and is distinctly refuted by the letter of December 21, 1944, in which the Secretary of War categorically states that he has made a determination of excessive profits on the basis of a single contract. Nothing whatsoever is stated about any determination by the Secretary of War that

the final payment was accrued by the petitioners in their 1943 fiscal year. Petitioners err in making this contention. If the respondent had made his determination as to excessive profits realized in petitioners' 1943 fiscal year and had determined in connection therewith that all of the contract payments of the Government had been received or accrued in the 1943 fiscal year despite petitioners' system of accounting on a cash basis, petitioners could have raised the issue whether their total contract receipts in their 1943 fiscal year amounted to $4,191,954.84 or $4,554,733.17. That issue is not raised in the pleadings in this proceeding, and as stated above, the respondent's determination is not made on the basis of the fiscal year for 1943 or any other fiscal year.

Respondent errs in his contention that the Secretary of War had the power to renegotiate on the basis of a single contract. In considering a similar question in *Brady* v. *W. C. P. A. B.*, 11 T. C. 280, 285, 286, we pointed out that section 403 (c) (1) of the 1943 Renegotiation Act deprived the "Secretaries" of power to renegotiate as to all fiscal years ending after June 30, 1943, and vested that power in the War Contracts Price Adjustment Board; that a complete scheme of renegotiation was set up in the 1943 Act; and that the 1942 Act was superseded by the 1943 Act. See, also, *Buck* v. *W. C. P. A. B.*, 10 T. C. 623, 625; *Aircraft & Diesel Equipment Corp.* v. *Stimson*, 5 T. C. 362. Under the 1943 amendments, and under the facts in this case, the Secretary of War was deprived of authority to renegotiate the excessive profits of the petitioners on a contract basis because all of the contract payments were not paid to the petitioners, who kept their books and reported income on a cash basis, during a fiscal year which ended before June 30, 1943. The Secretary of War, making his final determination on December 21, 1944, after the enactment of the 1943 Revenue Act, could have recognized the legislative curtailment of his authority to renegotiate on a contract basis where contract payments were received by a contractor on a cash basis, in a fiscal year ending after June 30, 1943, but that he failed to do. He could have—but he did not—renegotiated with respect to the profits realized in the 1943 fiscal year of the petitioners. Having failed to give heed to the 1943 amendments which put into effect a new scheme of renegotiation and, at the same time, restricted the jurisdiction of the "Secretaries," the Secretary of War persisted in renegotiating with respect to the petitioners on the basis of a complete and single contract. In so doing, he erred.

The holding in the case of *Psaty & Fuhrman, Inc., supra,* on which respondent relies heavily is not contrary to the above. That case is distinguishable chiefly because in that case the Secretary of War had made a final unilateral determination of excessive profits on the

basis of a complete contract *prior to* the enactment of the 1943 Revenue Act, and he was acting under the authority given to him by the 1942 Act before the 1943 amendments could operate to restrict his powers of renegotiation. It was held that the subsequent enactment of the 1943 Act did not invalidate the Secretary's prior determination. The facts are different here, where the Secretary made a unilateral determination on a single contract basis almost eleven months after the passage of the 1943 Act at a time when he no longer had the authority to renegotiate the petitioners' profits on a single contract basis.

It is pertinent to observe that any renegotiation of the petitioners' profits under the contract, realized in their 1944 fiscal year, would be invalid because the amount of profits realized was less than $500,000. Section 403 (c) (6), Renegotiation Act of 1943.

We come now to the question of jurisdiction. The statutory basis of this Court's jurisdiction under the Renegotiation Act is a valid *determination* of excessive profits made by an agent or agency of the Government which has the authority under the Renegotiation Act to make the determination. It is from a valid determination under the Renegotiation Act that a petition to this Court may be filed. Section 403 (e). If and only if this Court has jurisdiction, may we exercise the function of making a *redetermination* with respect to excessive profits, if any are found to have been realized. In the instance where this Court has jurisdiction, the trial of the proceeding is *de novo*, i. e., the proceeding is *de novo* in the matter of presenting evidence under the rules relating to burden of proof under the issues presented. The petitioners contend, mistakenly, that we can take jurisdiction from an invalid determination of excessive profits, i. e., one made without statutory authority, and *de novo* make a valid determination of excessive profits, if any are found to exist. The Congress has not placed such authority in this Court. Obviously, the error in this contention of the petitioners follows upon their incorrect assumption that this Court has jurisdiction in this cause.

We do not have jurisdiction in this cause. Under the second part of section 403 (e) (2) (see footnote 2, *supra*), this Court is given jurisdiction only where a contractor is "aggrieved by a determination of the Secretary made on or after the date of the enactment of the Revenue Act of 1943, *with respect to any such fiscal year*" (emphasis added), namely, a fiscal year ending before July 1, 1943, as to the existence of excessive profits. It has been found as a fact that the respondent did not make any determination as to the existence of excessive profits with respect to a fiscal year ended before July 1, 1943. It would require making an initial determination as to the existence of excessive profits for the petitioners' 1943 fiscal year if we undertook to consider this cause. We should point out that the question of

jurisdiction does not arise from a motion to dismiss for lack of jurisdiction. No such motion has been filed. This proceeding was submitted to the Court upon trial at which the parties submitted all of the evidence which they deemed to be material. In candor it should be said that the evidence has been fully reviewed and we have attempted to decide the question relating to the realization of excessive profits during the 1943 fiscal year, if any, but in so doing, it has become evident that if we undertook to decide that question, and if in so doing we concluded that some of the profits realized were excessive, we would be making an initial determination with respect to a fiscal year as to which the respondent has not made a determination. The determination of the respondent has been made upon the basis of the total contract payments and the total expenses under the contract, involving both expenses and receipts incurred and received after June 30, 1943. If we were to assume jurisdiction over this cause, we necessarily would be making an initial determination, particularly if we determined that any excessive profits were realized, and in so doing we would be obliged, under the evidence presented, to make allocations and adjustments which would represent not a redetermination procedure, but an initial renegotiation. Perhaps in the trial of this proceeding, the parties could have overcome some of the problems which exist at present because of the way in which this proceeding has been presented to us. But as the cause now stands, in order to dispose of the issue relating to excessive profits on the merits, we would be performing a function which is vested exclusively in the respondent by statute. That he failed properly to exercise his authority does not bring about an enlargement of our jurisdiction, and certainly we cannot volunteer to do more than the Congress has authorized us to do.

The conclusion reached here is not contrary to *Psaty & Fuhrman, Inc., supra*. In that case, the Secretary of War had made a valid, unilateral determination under the authority of the 1942 Renegotiation Act on the basis of a completed contract prior to February 25, 1944, the date of the enactment of the Renegotiation Act of 1943. We held that this Court had jurisdiction over the cause because the Secretary of War had the authority to make the determination on the completed contract basis *at the time he made the determination;* and, therefore, under the facts of that case, we construed the provisions of section 403 (e) (2) of the Renegotiation Act of 1943 to give this Court jurisdiction over that cause, in the light of Congressional intent, even though the determination was on a completed contract basis rather than on the basis of a fiscal year ending before July 1, 1943. This proceeding is distinguished from the *Psaty & Fuhrman* case because the determination of the Secretary of War here involved was not made prior to the date of the enactment of the Revenue Act

of 1943 which enacted the Renegotiation Act of 1943, and was, there-fore, a determination on a completed contract basis which the Secretary of War did not have the authority to make. See *Brady* v. *W. C. P. A. B., supra.*

Accordingly, we must dismiss this proceeding for lack of jurisdiction.

Reviewed by the Court.

*An Order of Dismissal will be entered.*

ARUNDELL, *J.,* dissenting: I think this Court has erred in declining to accept jurisdiction in this case. Section 403 (e) (2) of the applicable statute, which is quoted in the majority report, permits a contractor to petition this Court where he is "aggrieved by a determination of the Secretary made on or after the date of the enactment of the Revenue Act of 1943, with respect to any such fiscal year," i. e., the fiscal year ending before July 1, 1943, as to the existence of excessive profits. The substance of the majority holding is that the Secretary did not make a determination with respect to a fiscal year but made his determination on what is called a completed contract basis, that a determination so made is invalid and, consequently, there is no determination that is subject to redetermination by this Court.

The prime error of my colleagues is in finding that the determination was not made "with respect to a fiscal year." The contract was entered into and substantially performed during petitioner's fiscal year ended March 31, 1943. Practically all expenditures were made during that period and all payments were made except a sum which was withheld pending renegotiation. Certainly the determination was with respect to that year. As stated by the Court of Appeals for the District of Columbia, in reversing us in *Maguire Industries, Inc.* v. *Secretary of War,* 185 F. 2d 434, "The Secretary's redetermination not only affects petitioner's fiscal year but affects it in a large and direct way." As stated by the Court in *Muzzey* v. *Reardon,* 57 N. H. 378, 381, "in respect to" means "connected with and growing out of." See also *People* v. *Clarke,* 9 N. Y. 349, 368.

The Tax Court is the only tribunal provided by Congress where a contractor, aggrieved by a determination that his profits were excessive, may petition for redetermination. We should be slow to hold we are without jurisdiction in such cases. As, in my opinion, the Secretary's determination in this case was "with respect to a fiscal year" even though it was not for a fiscal year, I think the Tax Court should accept jurisdiction and dispose of this matter on its merits.

VAN FOSSAN, DISNEY, and JOHNSON, *JJ.,* agree with this dissent.