SERVICES, RESPONDENT.

R. G. LeTOURNEAU, INC., PETITIONER, *v.* ADMINISTRATOR OF GENERAL

Docket No. 907–R. Filed June 7, 1954.

*M. O. Gard, Esq.*, and *T. W. Swain, Esq.*, for the petitioner.
*James H. Prentice, Esq.*, for the respondent.

### OPINION.

KERN, *Judge:* This case is before us on respondent's motion to dismiss this proceeding for lack of jurisdiction.

The petition is predicated on notices from respondent determining net renegotiation rebates for 1942, 1943, and 1944, and asks that we "redetermine the excessive profits of and Net Renegotiation Rebates due the petitioner" for 1942, 1943, and 1944. Petitioner's excessive profits for these years were settled by duly executed bilateral agreements between petitioner and the Government, and we do not understand petitioner to be seeking any redetermination of the amounts there agreed upon except as the renegotiation rebates may be considered as affecting such excessive profits. The errors alleged in the petition relate only to the determination of such renegotiation rebates.

The bilateral agreements for the years 1943 and 1944, respectively, provide in paragraph 10 as follows:

10. *Renegotiation Rebate.* Nothing contained in this agreement shall prejudice any right which the Contractor may have to recover a renegotiation rebate pursuant to subsection (a) (4) (D) of the Renegotiation Act.

Petitioner contends that these contract provisions and the law itself establish an exception to the statutory provision for the conclusiveness of bilateral agreements of settlement of the amounts of excessive profits.

The statute, section 403 (a) (4) (C) of the Renegotiation Act of 1943, defers the allowance, as an item of cost, of an amortization deduction of an emergency facility until after a recomputation of it has been made under the Internal Revenue Code for the purpose of determining taxes; section 403 (a) (4) (D) provides that in the case of a renegotiation which is made prior to such recomputation the United States shall repay to the contractor, after such recomputation,

the amount of the net renegotiation rebate computed as described in that subsection [1] and that this will be done notwithstanding any of the provisions of section 403 (c) (4), which provides as follows:

(4) For the purposes of this section the Board may make final or other agreements with a contractor or subcontractor for the elimination of excessive profits and for the discharge of any liability for excessive profits under this section. Such agreements may contain such terms and conditions as the Board deems advisable. Any such agreement shall be conclusive according to its terms; and except upon a showing of fraud or malfeasance or a willful misrepresentation of a material fact, (A) such agreement shall not for the purposes of this section be reopened as to the matters agreed upon, and shall not be modified by any officer, employee, or agent of the United States, and (B) such agreement and any determination made in accordance therewith shall not be annulled, modified, set aside, or disregarded in any suit, action, or proceeding.

Petitioner argues that the amortization rebate reflects a cost factor in the determination of the amount of the excessive profits; in other words, that the delayed renegotiation rebate, in effect, will serve to diminish the amount by which a contractor's profits were found to be excessive. In this respect, it can be said to be related as a practical matter to the ultimate ascertainment of the amount of excessive profits realized by the contractor. This, however, does not of itself give the Tax Court jurisdiction of any controversy which may arise concerning such a rebate. Our jurisdiction is limited by the statutory provision (section 403 (e) (1) and (2)) to situations of a contractor's being "aggrieved by an order of the Board determining the amount of excessive profits received or accrued." We have no such order here. What

---

[1] Sec. 403 (a) (4) (D), Renegotiation Act of 1943.

\* \* \* \* \* \* \*

the amount of a net renegotiation rebate computed in the following described manner. There shall first be ascertained the portion of the excessive profits determined by the renegotiation which is attributable to the fiscal year with respect to which a net renegotiation rebate is claimed by the contractor or subcontractor (hereinafter referred to as "renegotiated year"). There shall then be ascertained the amount of the gross renegotiation rebate for the renegotiated year, which amount shall be an allocable part of the additional amortization deduction which is allowed for the renegotiated year upon the recomputation made pursuant to section 124 (d) of the Internal Revenue Code in connection with the determination of the taxes for such year and which is attributable to contracts with the Departments and subcontracts, except that the amount of the gross renegotiation rebate shall not exceed the amount of excessive profits eliminated for the renegotiated year pursuant to the renegotiation. The allocation of the additional amortization deduction attributable to contracts with the Departments and subcontracts, and the allocation of the additional amortization deduction to the renegotiated year shall be determined in accordance with regulations prescribed by the Board. There shall then be ascertained the amount of the contractor's or subcontractor's Federal tax benefit from the renegotiation for the renegotiated year. Such Federal tax benefit shall be the amount by which the taxes for the renegotiated year under Chapters 1, 2A, 2B, 2D and 2E of the Internal Revenue Code were decreased by reason of omitting from gross income (or by reason of the application of the provisions of section 3806 (a) of the Internal Revenue Code with respect to)—that portion of the excessive profits for the renegotiated year which is equal to the amount of the gross renegotiation rebate. The amount by which the gross renegotiation rebate for the renegotiated year exceeds the amount of the contractor's or subcontractor's Federal tax benefit from the renegotiation for such year shall be the amount of the net renegotiation rebate for such year.

petitioner regards as such an order reads for 1943, for example, as follows:

In accordance with the provisions of subsection (a) (4) (D) of the Renegotiation Act, the amount of your net renegotiation rebate for the subject fiscal year has been determined as follows:

| | |
|---|---|
| Gross Renegotiation Rebate | $146,195.15 |
| Less: Federal Tax Benefit (computed and determined by the Bureau of Internal Revenue) | 58,478.10 |
| Net Renegotiation Rebate | $87,717.10 |

Accordingly, a net renegotiation rebate in the above amount for the year indicated has been certified to the Secretary of the Treasury for payment.

On its face the letter advises petitioner of a refund. This does not satisfy our jurisdictional statute.

The conclusion must be that the renegotiation rebate is to be handled as an administrative matter, over which this Court has no jurisdiction. That this must be so is further evident by the fact that the statute indicates (section 403 (a) (4) (C)) that such rebates may be computed and allowed even after the entry of a final order in a case before this Court. The statute states:

The absence of such a recomputation of the amortization deductions referred to in clause (i) above shall not constitute a cause for postponing the making of an agreement, or the entry of an order, determining the amount of excessive profits, or for staying the elimination thereof.

If petitioner's position were correct, we could find ourselves in the impossible situation of making two final determinations of a contractor's excessive profits for the same year—one on a redetermination of a regular unilateral determination and a second on a consideration of a letter granting a renegotiation rebate.

Because of the foregoing, we must conclude that under the controlling law the renegotiation rebate, like matters of credits for income tax (*Rosner* v. *W. C. P. A. B.*, 17 T. C. 445), assessment and collection of interest on defaulted refunds (*Greaves* v. *W. C. P. A. B.*, 10 T. C. 886), and purported determinations of excessive profits for other than a contract or fiscal period, pursuant to, and additional to, those provided in a bilateral agreement (*Maguire Industries, Inc.* v. *Secretary of War*, 12 T. C. 75, revd. (C. A., D. C.) 185 F. 2d 434; *National Builders, Inc.* v. *Secretary of War*, 16 T. C. 1220), is not within the jurisdiction of this Court.

Reviewed by the Court.

*An order will be entered dismissing the proceeding for lack of jurisdiction.*