JOHN B. BRADY, PETITIONER, *v.* WAR CONTRACTS PRICE ADJUSTMENT BOARD, RESPONDENT.

Docket No. 140-R. Promulgated September 15, 1948.

*William M. Rice, Esq.*, and *John L. Grabber, Esq.*, for the petitioner.
*William T. Becker, Esq.*, for the respondent.

282

284

OPINION.

HILL, *Judge*: It is stipulated, and we agree, that, in compliance with the Renegotiation Act of 1942, renegotiation was commenced on September 7, 1943, by the Secretary of the Navy of petitioner's renegotiable business for the year 1943.

Under section 403 (c) (1) of the 1942 Act it was not necessary to await the end of the year renegotiated before commencing renegotiation thereof. That section provides:

Whenever, in the opinion of the Secretary of a Department, the profits realized *or likely to be realized* from any contract with such Department, or from any subcontract thereunder whether or not made by the contractor, may be excessive, the Secretary is authorized and directed to require the contractor or subcontractor to renegotiate the contract price. * * * [Emphasis supplied.]

The comparable part of section 403 (c) (1) of the 1943 Act provides:

Whenever, in the opinion of the Board, the amounts *received or accrued* under contracts with the Departments and subcontracts may reflect excessive profits, the Board shall give to the contractor or subcontractor, as the case may be, reasonable notice of the time and place of a conference to be held with respect thereto. The mailing of such notice by registered mail to the contractor or subcontractor shall constitute the commencement of the renegotiation proceeding. * * * [Emphasis supplied.]

It appears from the language above quoted from the 1943 Act that renegotiation under that act is based on actual receipts received or accrued during the period covering renegotiation. Hence, the commencement of renegotiation for 1943 prior to the end of such year would, under the 1943 Act, be premature. This is true for the reason that only upon the close of business at the end of the year could the amounts received or accrued be ascertained.

The Renegotiation Act of 1942 provided no time limit within which to conclude renegotiation after its commencement. But section

403 (c) (3) of the Renegotiation Act of 1943 [1] prescribes such time limit of one year, and it also prescribes the time limit for the commencement of renegotiation.

Petitioner takes the position that renegotiation for the year 1943 was commenced on September 7, 1943, for the purposes of the Renegotiation Act of 1943 and that, since the renegotiation was not concluded until the Board made its determination of excessive profits on December 20, 1944, his liability for excessive profits was discharged by the running of the statute of limitations as provided in section 403 (c) (3) of the 1943 Act.

Petitioner further contends that there was no commencement of renegotiation for the year 1943 other than that of September 7, 1943, pursuant to which respondent could have made its determination of excessive profits.

We do not agree with either of such contentions of petitioner.

Section 403 (c) (1) of the 1942 Act vested jurisdiction to renegotiate war contracts in the secretaries of certain departments. Section 403 (c) (1) of the 1943 Act, however, deprived such secretaries of such jurisdiction as to all fiscal years ending after June 30, 1943, and vested it in the War Contracts Price Adjustment Board, and, although that act did not become law until February 25, 1944, it was made applicable to all contracts and subcontracts involving any fiscal year ending after June 30, 1943.

Renegotiation of the subject matter here involved was commenced on September 7, 1943, under the Renegotiation Act of 1942. The renegotiation so commenced was timely under the 1942 Act and was pending and uncompleted when the Renegotiation Act of 1943 was passed.

While the Renegotiation Act of 1943 is an amendment of the 1942 Act, it, in fact, as to all fiscal years ending after June 30, 1943, sets up a complete scheme of renegotiation and prescribes completely the procedure to accomplish it without including or incorporating therein

---

[1] (3) No proceeding to determine the amount of excessive profits shall be commenced more than one year after the close of the fiscal year in which such excessive profits were received or accrued, or more than one year after the statement required under paragraph (5) is filed with the Board, whichever is the later, and if such proceeding is not so commenced, then upon the expiration of one year following the close of such fiscal year, or one year following the date upon which such statement is so filed, whichever is the later, all liabilities of the contractor or subcontractor for excessive profits received or accrued during such fiscal year shall thereupon be discharged. If an agreement or order determining the amount of excessive profits is not made within one year following the commencement of the renegotiation proceeding, then upon the expiration of such one year all liabilities of the contractor or subcontractor for excessive profits with respect to which such proceeding was commenced shall thereupon be discharged, except that (A) if an order is made within such one year by the Secretary (or an officer or agency designated by the Secretary) pursuant to a delegation of authority under subsection (d) (4), such one-year limitation shall not apply to review of such order by the Board, and (B) such one-year period may be extended by mutual agreement.

any of the provisions of the Renegotiation Act of 1942. The latter act, as to all such fiscal years, was, therefore, superseded and, by implication, repealed by the 1943 Act. The latter act contained no saving provision as to pending renegotiation proceedings for such years initiated under the 1942 Act. Therefore, such proceedings terminated upon the enactment of the 1943 Act. The Act of 1943 is the law applicable to the renegotiation of the subject matter here involved, to the exclusion of all proceedings had in respect thereof under the 1942 Act.

In *Railroad Co.* v. *Grant*, 98 U. S. 398, the Supreme Court stated:

> It is equally well settled that if a law conferring jurisdiction is repealed without any reservation as to pending cases, all such cases fall with the law.

See also 14 Am. Jur. § 172, 15 C. J. 825; *Hallowell* v. *Commons*, 239 U. S. 506; and *American Coast Line, Inc.*, 6 T. C. 67, 73; affd., 159 Fed. (2d) 665.

It follows that the commencement of renegotiation of September 7, 1943, under the 1942 Act for the year ending December 1, 1943, did not survive as such commencement the termination of the applicability of that act to the subject matter here. Under the Renegotiation Act of 1943 the War Contracts Price Adjustment Board had exclusive jurisdiction to renegotiate the contracts here involved, including the exclusive power to initiate the renegotiation. Section 403 (c) (1). Since the Board was not created until the Renegotiation Act of 1943 became law on February 25, 1944, there could not have been, prior to such date, any commencement of renegotiation for the purpose of the limitation upon completion thereof fixed by section 403 (c) (3) of the 1943 Act. The limitations therein prescribed are (1) the limitation of time within which the Board shall commence renegotiation and (2) the limitation of time within which the Board shall conclude the renegotiation after it has been commenced.

Petitioner argues that, if it is determined that the letter of September 7, 1943, did not commence renegotiation proceedings under the Act of 1943, respondent must show that there was a commencement in accordance with the provisions of the Renegotiation Act of 1943.

Pertinent to consideration of this question is the letter from the Office of the Under Secretary of the Navy to petitioner under date of May 1, 1944, which is set forth in our findings of fact. That letter was sent by registered mail and, in short, advises petitioner that the renegotiation of his contracts is to be conducted under the terms of the Renegotiation Act of 1943 and instructs him as to what information and data respecting his renegotiable business are required to be furnished. Since it was obvious that under the renegotiation proceedings conducted prior to the enactment of the 1943 Act practically all, if

not all, of the information and data so required had been furnished and was in possession of the renegotiating officials, a note was attached to the letter advising petitioner to make reference to such fact in his report and also advising him that no duplication of information and data was necessary.

In our findings of fact is set forth a letter sent by registered mail from the Secretary of the Navy as the delegatee of the Board to the petitioner under date of October 9, 1944, advising petitioner that on the basis of information and data relative to his renegotiable business for the year 1943 the renegotiating officials had reached the tentative conclusion that petitioner's excessive profits for the year indicated amounted to $20,000. This letter further notified petitioner that, before entering a unilateral order determining the amount of excessive profits, he would be accorded the opportunity of a conference at 11 a. m., Friday, October 13, 1944, at a designated place in Washington, D. C., at which he might present any further contentions which he might deem material to the question of his renegotiation.

The petitioner attended such conference.

In our opinion this letter, sent by registered mail, for the first time notifying petitioner of a conference, constituted commencement of renegotiation of petitioner's business under the 1943 Act.

Obviously it would be futile and an unnecessary waste of time and effort to require petitioner to resubmit the data and information which he had previously submitted relative to his business operations as a basis for renegotiation. The fact that renegotiating officials and petitioner availed themselves of such data in the renegotiation under the 1943 Act did not deprive the letter of October 9, 1944, above referred to, of its function as the commencement of renegotiation under that act.

On October 20, 1944, the delegatee of the Board made his unilateral determination of the amount of excessive profits with respect to petitioner's renegotiable business.

On December 20, 1944, the Board notified petitioner by registered mail of its unilateral determination of his excessive profits in the amount of $20,000, before adjustment for taxes. We therefore hold that petitioner's liability for excessive profits, before adjustment for taxes, is $20,000 and that such liability was not discharged under the limitation provisions of section 403 (c) (3) of the Renegotiation Act of 1943. Cf. *Harold F. Buck*, 10 T. C. 623.

An order will be entered in accordance herewith.

Reviewed by the Court.