OREGON BRASS WORKS, PETITIONER, *v.* WAR CONTRACTS PRICE ADJUSTMENT BOARD, RESPONDENT.

Docket No. 488–R. Promulgated May 23, 1951.

*Norman E. Anderson, Esq.,* for the petitioner.

*James H. Prentice, Esq.,* and *Frederick N. Curley, Esq.,* for the respondent.

OPINION.

VAN FOSSAN, *Judge:* On June 26, 1944, petitioner filed for its fiscal year 1943 the Standard Form of Contractor's Report required by subsection (c) (5) (A) of the Renegotiation Act of 1943, which reads, in part, as follows:

Every contractor * * * shall, * * * file with the Board * * * following the close of the fiscal year * * * a financial statement setting

forth such information as the Board may by regulations prescribe as necessary to carry out this section. * * *

Subsection (c) (1) provides, in part, that:

Whenever, in the opinion of the Board, the amounts received or accrued under contracts with the Departments * * * may reflect excessive profits, the Board shall give to the contractor * * * reasonable notice of the time and place of a conference to be held with respect thereto. The mailing of such notice by registered mail to the contractor * * * shall constitute the commencement of the renegotiation proceeding. * * *

Respondent's Regulation 241 for fiscal years ending after June 30, 1943, provides, in part, that:

Commencement of Renegotiation.—Renegotiation Proceedings are commenced by the mailing, by registered mail, of reasonable notice of the time and place of a conference to be held with respect to renegotiation. * * * Such a notice must always be given whenever, in the opinion of the renegotiating agency, the renegotiable business of the contractor may reflect excessive profits, and should always be given prior to holding any conference with the contractor for the purpose of considering or determining the amount of excessive profits. Such notice must always be given within the one year period within which renegotiation can be commenced. * * *

Subsection (c) (3) of the Act provides, in part, as follows:

No proceeding to determine the amount of excessive profits shall be commenced * * * more than one year after the statement required under paragraph (5) is filed with the Board, * * * and if such proceeding is not so commenced, then upon the expiration of * * * one year following the date upon which such statement is so filed, * * * during such fiscal year shall thereupon be discharged. * * *

It is apparent that under the provisions of the Renegotiation Act and the Regulation cited above, the respondent was required to commence the proceedings to determine the amount of petitioner's profits within one year from June 26, 1944, the date petitioner's report under subsection (c) (5) (A) was filed. The question is whether the correspondence of May 31, 1945, as set forth in our Findings of Fact, commenced the proceedings as to the year 1943 within the meaning of the Act. One of the letters on that date is in the usual form and stated that "This notice, * * * constitutes commencement * * *" and set the date of a conference for August 31, 1945. The petitioner concedes that this letter, standing alone, would constitute valid commencement. See *Harney, et al.* v. *Land*, 14 T. C. 666, and *Buck* v. *W. C. P. A. B.*, 10 T. C. 623. It is the second letter, however, also mailed on May 31, 1945, that gives rise to the controversy and on which the petitioner principally relies in its contention that renegotiation proceedings were not validly commenced for its year 1943. This second letter sent on May 31, 1945, states that:

Today we sent you a registered Notice of Commencement of Renegotiation Proceedings. However, it may not be necessary to hold the designated meeting.

Unless you hear from us further, you may cancel the date of the meeting, August 31, 1945.

Very truly yours,

[s] J. Knight Allen,
J. KNIGHT ALLEN,
*Price Adjustment Board.*

Subsection (c) (1) of the Act states that the mailing of the notice of the conference "* * * shall constitute the commencement * * *." Therefore, a letter, the purpose of which is to schedule a conference, is apparently the only manner provided for the commencement of the renegotiation proceedings. The obvious question obtrudes—if scheduling a conference is part of the mechanism for commencing renegotiation, then does the tentative cancellation of the conference revoke what was otherwise a valid commencement? The petitioner contends that it does, and invokes the language of subsection (c) (3) of the Renegotiation Act which states that if the renegotiation proceeding is not commenced within one year following the date upon which the contractor's report is filed, the liabilities of the contractor for excessive profits during such year shall be discharged.

The petitioner bases its argument on the premise that the second letter of May 31, 1945, made the first letter of that date a nullity. Petitioner contends, further, that the obvious purpose of the first letter of May 31, 1945, was only an attempt to prevent the running of the statute and open the renegotiation proceedings within the statutory period; that there was never any intent that the conference date set in the first letter would be kept; that this date was fictitiously set for the sole purpose of providing the prescribed statutory subject matter of the formal letter commencing renegotiation; that the respondent's requirement of notice apparently having been met, it immediately and on the same day cancelled the conference. The petitioner's argument is largely speculative and is essentially based on equitable grounds implying that, although the respondent did hew sharply to the line prescribed by the statute, it was never intended by the latter to comply with the spirit thereof. We do not so construe the evidence.

While recognizing that petitioner's interpretation of the two letters is superficially possible, we do not believe that such interpretation is tenable in the face of the obvious purpose of the Renegotiation Act, nor is it supported by the other facts of record. Specifically, between the dates of June 27, 1945, and July 18, 1945, the parties were engaged in correspondence applying to the petitioner's year 1943 which gives every indication that there was no doubt then that petitioner considered that renegotiation proceedings were commenced for that year. Petitioner's counsel, on July 14, 1945, wrote to the respondent's delegatee stating that he would supply, in the latter part of that month,

any further data required in connection with the case. Petitioner's counsel advised the respondent's delegatee that the date of August 4, 1945, was acceptable to him for a conference as to the years 1943 and 1944. It seems clear, from these exchanges of communications, that the parties were negotiating before July 30, 1945, for a conference date convenient to the petitioner with respect to its fiscal year 1943. Since these matters all took place prior to July 30, 1945, it seems clear that the parties then understood that the conference with respect to the petitioner's year 1943 would take place at some agreed date under the commencement letter of May 31, 1945.

The petitioner argues that if the commencement letter of May 31, 1945, validly commenced the renegotiation proceedings for 1943, there was no need for the mention of the year 1943 in the letter of July 30, 1945, which letter states that "* * * renegotiation proceedings * * * for your fiscal years ended December 31, 1943 and December 31, 1944 shall be conducted initially by this Office." Therefore, contends petitioner, the Government did not consider that renegotiation proceedings had previously been validly commenced for 1943. Again we cannot agree.

In writing the letter dated July 30, 1945, the author obviously used a form letter in which the reference to "commencement of the renegotiation proceedings" was inappropriate as to 1943 and should be treated as surplusage. It demonstrates carelessness or possible confusion on the part of the author but we do not think it conclusive of the respective rights of the parties. It is but one fact in the case.

By its terms, the first letter of May 31, 1945, commenced the processes of renegotiation. Were it not for the second letter on the same date there would be no question here for resolution. The second letter of May 31, 1945, on its face did not purport to cancel the notice of commencement of renegotiation contained in the first letter. It intimates that no conference may be necessary and tentatively cancels the date of such conference. It did not speak with finality nor did it cancel categorically the date of the conference on August 31, 1945; that is, it conditioned such cancellation on possible further advice. At any time later the petitioner might have been advised of the rescheduling of the conference on another date.

The petitioner's reliance upon *Sessions & Son* v. *Secretary of War*, 6 T. C. 1236, is not apposite for it was the 1942 Act involved in that case. The provisions in the 1942 and 1943 Acts are quite different. The 1942 Act was, by implication, repealed by the 1943 Act. *Brady* v. *W. C. P. A. B.*, 11 T. C. 280. Petitioner cites no other case more directly in point.

In our opinion, the renegotiation proceedings for the petitioner's fiscal year ending December 31, 1943, were timely commenced within the meaning of the Renegotiation Act of 1943, and we so hold.

*Decision will be entered for the respondent.*