NORTHWEST AUTOMATIC PRODUCTS CORPORATION, A MINNESOTA CORPORATION, PETITIONER, *v*. THE UNITED STATES OF AMERICA, RESPONDENT.

Docket No. 798–R.    Filed June 23, 1955.

*Benedict S. Deinard, Esq.*, for the petitioner.
*Harlan F. Leathers, Esq.*, for the respondent.

464

468

472

**OPINION.**

FISHER, *Judge:* The issues presented for our consideration are whether a renegotiation proceeding in respect to petitioner for its fiscal year ended December 31, 1944, was timely commenced or, if so timely commenced, whether it was timely completed in accordance with the provisions of section 403 (c) (3) of the Renegotiation Act

of 1943. Questions raised in connection with these issues are indicated below in the statement of petitioner's and respondent's several contentions, and are considered, to the extent required, in our discussion.

The Renegotiation Act of 1943 (as amended by the Revenue Act of 1943, which became effective on February 25, 1944) applicable to fiscal years ended after June 30, 1943, limits the period in which a proceeding to determine excessive profits may be commenced and also the period in which it must be completed if so timely commenced. Failure either to timely commence or timely complete a renegotiation proceeding for any fiscal year relieves the contractor (or subcontractor) of all liability for such year. Section 403 (c) (3) of the Act provides, in part, as follows:

No proceeding to determine the amount of excessive profits shall be commenced more than one year after the close of the fiscal year in which such excessive profits were received or accrued, or more than one year after the statement required under paragraph (5) is filed with the Board, whichever is the later, and if such proceeding is not so commenced, then * * * all liabilities of the contractor or subcontractor for excessive profits received or accrued during such fiscal year shall * * * be discharged. * * *

With respect to completion of a proceeding timely commenced, section 403 (c) (3) further provides:

If an agreement or order determining the amount of excessive profits is not made within one year following the commencement of the renegotiation proceeding, then upon the expiration of such one year all liabilities of the contractor or subcontractor for excessive profits with respect to which such proceeding was commenced shall thereupon be discharged, except * * * such one-year period may be extended by mutual agreement.

Paragraph (5), referred to in section 403 (c) (3) in respect to the contractor's statement required for determining the period for timely commencement, provides, in pertinent part, as follows:

Every contractor and subcontractor * * * shall, in such form and detail as the Board may by regulations prescribe, file with the Board on or before the first day of the fourth month following the close of the fiscal year * * * a financial statement setting forth such information as the Board may by regulations prescribe as necessary to carry out this section. * * *

It is further provided, that,

In addition to the statement required * * * every such contractor or subcontractor shall, at such time or times and in such form and detail as the Board may by regulations prescribe, furnish the Board any information, records, or data which is determined by the Board to be necessary to carry out this section. * * *

In accordance with the provisions of the Act in section 403 (c) (5), the Board has promulgated Renegotiation Regulation 222, in pertinent part, as follows:

.

(1) The "Standard Form of Contractor's Report" * * * is hereby prescribed as the form of mandatory financial statement generally required to be filed by contractors and subcontractors.

*     *     *     *     *     *     *

222.1   *Sufficiency of Contents.*

* * * The Reports are required to comprise all the information and exhibits specified by the forms and the instructions. However, if all the information called for by the appropriate "Standard Form of Contractor's Report" has been furnished by the contractor to an Agency authorized to conduct renegotiation proceedings under the 1943 Act, the contractor may complete the "Standard Form of Contractor's Report" by incorporating by reference the information so furnished and making a specific statement of the time and place of such filing. In such case, the fact that the information has been received will be certified to by the renegotiating Agency on the copy of the "Standard Form of Contractor's Report" which it will forward to the War Contracts Board within sixty days after the date of receipt of the Report by such Agency. A "Standard Form of Contractor's Report" so prepared and filed will be deemed to constitute a sufficient compliance with the mandatory filing requirements * * * in the absence of a notice of insufficiency sent to the contractor within 90 days after the Report has been filed.

The manner of timely commencement is specifically provided for in the Act in section 403 (c) (1), as follows:

Whenever, in the opinion of the Board the amounts received or accrued under contracts with the Departments and subcontracts may reflect excessive profits, the Board shall give to the contractor or subcontractor, as the case may be, reasonable notice of the time and place of a conference to be held with respect thereto. The mailing of such notice by registered mail to the contractor or subcontractor shall constitute the commencement of the renegotiation proceeding.

Renegotiation Regulation 241 merely reiterates that renegotiation proceedings are commenced by the mailing, by registered mail, of reasonable notice of the time and place of a conference to be held with respect to the renegotiation, and provides a form (in paragraph 721 of the regulations set out below [1]) which may be used for such purpose.

We think that our analysis of the problem will be more readily followed if we first state in some detail the series of closely interrelated alternative contentions of petitioner and respondent.

Petitioner first contends that the letter from Chicago P. A. D., dated May 8, 1945, setting a "preliminary conference" between Northwest

---

[1]                                         (Assignee Department or Service)
                                                          Date

GENTLEMEN:

The War Contracts Price Adjustment Board has determined that renegotiation proceedings under the Renegotiation Act (Title VII of the Revenue Act of 1943) for your fiscal year ended _____ shall be conducted initially by this office.

A conference with you with respect to this matter is hereby set for _____ at _____ if that time is not convenient, kindly advise us promptly in order that a continuance may be arranged.

This notice, sent by registered mail, constitutes commencement of the renegotiation proceedings in conformity with the provisions of subsection (c) (1) of the Renegotiation Act.

Very truly yours,

and the representatives of Chicago P. A. D., timely commenced renegotiation proceedings in respect to petitioner for its fiscal year ended December 31, 1944, despite transmittal by other than registered mail. This contention is made conditionally, and only in connection with its related argument, that if the letter had the effect of timely commencement the determination of excessive profits issued by the Bureau of Federal Supply on April 30, 1947, was not made within the 1-year period following commencement of the proceeding as required under section 403 (c) (3) of the Act. Petitioner's second contention is that the filing of the contractor's report for 1944 on May 4, 1945, in accordance with section 403 (c) (5) of the Act, marked the beginning of the 1-year period in which renegotiation proceedings might be commenced under section 403 (c) (3), and that no proceeding was so timely commenced within 1 year from that date, (a) because the letter from Chicago P. A. D., dated May 1, 1946, purporting to commence the proceeding was a nullity since there was not set therein any time or place for an initial conference as required by section 403 (c) (1) of the Act, and (b) because the letter from Treasury P. A. D., dated April 21, 1947, sent by registered mail and setting a "final renegotiation conference," if sufficient to comply with the requirements of section 403 (c) (1) in respect to notice of commencement, was sent after the 1-year period in which the proceeding might be commenced. Petitioner further contends, in response to a position taken by respondent and set forth below, that if its contractor's report for 1944 was not sufficiently complete and accurate to comply with the requirements of the Act (and regulations promulgated thereunder) as of the date it was first filed, May 4, 1945, such additional information and data as was required to so complete the report was finally filed with Chicago P. A. D. at least by February 11, 1946. Accordingly, if the notice of May 1, 1946, was a nullity, the notice of April 21, 1947, regardless of whether or not it was in compliance with the provisions of the Act respecting notice of commencement, could not timely commence a renegotiation proceeding having been sent more than 1 year after even the February 11, 1946, date of filing of the required contractor's report.

Respondent contends, on the other hand, that the registered letter of May 1, 1946, which omitted the paragraph of the form letter (see note 1, *supra*) setting a time and place for an initial conference, was sufficient to timely commence the renegotiation proceeding, since several conferences had already been held between the parties and another had been set by agreement shortly before May 1 for several days hence. Accordingly, completion of the proceeding on April 30, 1947, would also be timely. Respondent further argues that the letter of May 8, 1945, did not commence a renegotiation proceeding, since it was merely a preliminary notice of conference and was not sent to petitioner by

registered mail as required by section 403 (c) (1), but respondent contends by affirmative pleadings, if that letter did constitute a commencement then petitioner is estopped from asserting that the proceeding was not timely completed on April 30, 1947, because of an alleged agreement between the parties to extend the period for completion. Respondent's last contention is that the period for commencement of a renegotiation proceeding had not begun to run until July 3, 1946, at which time the petitioner's contractor's report required by section 403 (c) (5) was first completely and accurately filed, and that the notice of April 21, 1947, setting a "final renegotiation conference," in all particulars met the requirements of a commencement notice, and therefore, did timely commence the proceeding within 1 year from the date of the filing of petitioner's financial statement. It is argued, therefore, that the proceeding was timely completed by the order of April 30, 1947.

We first consider whether the letter of May 8, 1945, from Chicago P. A. D. requesting a preliminary conference with representatives of Northwest commenced renegotiation proceedings in respect to petitioner for its fiscal year ended December 31, 1944, in accordance with the provisions of the Renegotiation Act of 1943. For the reasons set out below we do not think that this letter was either intended to commence a proceeding or that it complied with the requirements of a notice of commencement under section 403 (c) (1) of the Act.

The letter in question has been fully set out in our Findings of Fact and we need only summarize briefly the mode of transmission and its contents. The letter was sent by regular mail. It indicated that Northwest had been reassigned to Chicago P. A. D. for renegotiation for its fiscal year 1944, and that past experience pointed to the importance of a preliminary conference with the representatives of the contractor in expediting the work of the Board. Accordingly, a meeting was requested for May 18, 1945.

Petitioner contends (conditionally, as set forth *supra*) that this communication fulfills all of the essential statutory requirements of section 403 (c) (1) for a notice of commencement, since it reports reassignment of Northwest to Chicago P. A. D. for renegotiation, and since it gives reasonable notice of a time and place of a conference to be held with respect to renegotiation. Petitioner argues that designation of the conference as "preliminary" is unimportant and that the meeting was intended to be an "initial" conference on the matter, which was then ready for renegotiation, the contractor's report for 1944 having been filed on May 4. Petitioner further argues that failure to mail the letter of May 8, 1945, by registered mail does not render it ineffective to commence a proceeding, since the petitioner did in fact

receive the notice and subsequently acted upon it by attending the May 18, 1945, meeting held in Chicago.

We cannot agree with petitioner's contentions. In *Harold F. Buck v. War Contracts Price Adjust. Board*, 10 T. C. 623 (1948), we had occasion to consider what constitutes commencement of a renegotiation proceeding under the statutory provisions here applicable. By enacting the Revenue Act of 1943, Congress, in effect, completely rewrote the limitations provisions of the Renegotiation Act for years ending after June 30, 1943, providing for both a period in which a renegotiation must be commenced and in which it must be concluded. For the first time a specific manner for commencement was provided for in section 403 (c) (1) requiring that whenever, in the opinion of the Board, the amounts received or accrued under war contracts may reflect excessive profits, the Board shall give the contractor reasonable notice of the time and place of a conference to be held with respect thereto and that the mailing of such notice, by registered mail, shall constitute the commencement of the renegotiation proceeding. In *Buck* the letter purporting to commence renegotiation merely contained a request for the submission of certain data and information. We held that Congress, when, for the first time, it prescribed a specific manner of commencement, was fully aware of the numerous different and conflicting interpretations previously existing as to what constituted a commencement, and did not intend that the making of a request for submission of data and information on which the renegotiation might be based would also constitute commencement. We stated:

To the contrary, we think that * * * for the purpose of starting the newly established period of limitation * * * Congress did not intend that a request for data and information was to be regarded as the commencement of renegotiation.

The reasoning there expressed is applicable here in respect to the letter of May 8, 1945, which in the circumstances of this case, we think was intended as a preliminary step with a view toward renegotiation. The purpose of the proposed conference appears to have been primarily exploratory. However, even if the officials of Chicago P. A. D. were at any time of the opinion that the letter of May 8, 1945, or any other act or communication prior to that of May 1, 1946, commenced renegotiation, as might be indicated by their statement in the letter of May 1, 1946, that "There is a difference of opinion as to when renegotiation commences in a particular case * * *," we nevertheless hold, as we did in the *Buck* case, that Congress did not intend that a notice such as the one here in question should have the effect of a commencement of renegotiation. If Congress had so intended it would no doubt have plainly provided for alternative forms of notice of commencement.

Moreover, it is vital to commencement of a proceeding, within the meaning of the Act, that the notice of commencement be sent by registered mail. The statute is explicit in this respect and it is immaterial that Northwest did in fact receive the communication. It is evident that in view of the difficulties faced under earlier renegotiation acts in construing the acts and circumstances which constituted commencement of a proceeding, Congress had this very problem in mind when it virtually rewrote the renegotiation law by passage of the Renegotiation Act of 1943. Mailing of the notice of commencement by registered mail is an act of sufficient definiteness to dispel most doubts in respect to when a proceeding is formally commenced for the purpose of applying the limitations on commencement and completion of a renegotiation proceeding. Congress obviously intended thereby to eliminate, to the extent possible, uncertainty as to timely commencement and as to the beginning of the critical period for timely completion of a proceeding.

We have previously considered a like issue involving the necessity of mailing a notice of deficiency by registered mail in order to determine whether a petition therefrom to this Court is timely filed within the permissible 90 days. In *Henry M. Day*, 12 B. T. A. 161 (1928), where a deficiency notice was admittedly delivered manually, we said,

that Congress intended, in providing for notice in a certain manner, i. e., by registered mail, to exclude all other forms as the condition precedent to our jurisdiction. This view has much weight because of the many difficulties of proof which would attend a determination of whether we had jurisdiction or not once it should be held that the method prescribed by statute is not the exclusive method. * * *

See also, *Henry Wilson*, 16 B. T. A. 1280 (1929) ; *William M. Greve*, 37 B. T. A. 450 (1938) ; *John A. Gebelein, Inc.*, 37 B. T. A. 605 (1938) ; *Oscar Block*, 2 T. C. 761 (1943) ; *Midtown Catering Co.*, 13 T. C. 92 (1949). In the *Block* case we added to this view the belief that to hold otherwise would deprive the statute of some of the important benefits which Congress intended should be derived from it. The principle underlying our decisions in these tax cases is equally applicable to a case involving commencement of a renegotiation proceeding. It is that *all* parties be properly apprised of commencement in order to eliminate doubt as to the moment of commencement. Provision for sending such notice of commencement by registered mail provides an adequate means of meeting this need and must be deemed a necessary requirement in every case if those benefits intended by Congress are to be assured.

We come then to consider whether the letter of May 1, 1946, timely commenced renegotiation. This letter also has been fully set out in

our Findings of Fact. In form it is largely as prescribed in the regulations, stating that renegotiation proceedings with respect to petitioner for its fiscal year ended December 31, 1944, were to be conducted initially by Chicago P. A. D., and that the notice sent by registered mail constituted commencement of the renegotiation proceeding, except that no time or place was set for a conference in respect to renegotiation.

Petitioner contends that the notice of May 1, 1946, was materially defective since the most important element of a notice of commencement, namely, the time and place of conference, was not contained therein. Respondent, on the other hand, argues that, in the circumstances of this case, it is immaterial that no conference was set. In this connection, respondent urges that a conference had been held the day before (on April 30, 1946) and that another had been arranged for the following week. There is little in the record to indicate what generally transpired at the "conferences," or what their significance may have been. With respect to the meeting of April 30, 1946, the record indicates only that the representatives of Chicago P. A. D. and Griswold were in contact with each other, but the surrounding circumstances and the purposes of that meeting are not made clear, except that the meeting appears to have related to Micromatic and not Northwest. The other meeting (the following week) occurred when Mr. Cahill, one of the representatives of Chicago P. A. D., was in Minneapolis on other business. At that time he was to pick up the extension agreements sent by Chicago P. A. D. to Griswold on May 1 (see Findings of Fact, *supra*), if they had been executed by Griswold. He was also to contact Peat, Marwick & Mitchell with respect to a proposed audit of Micromatic. It appears that after some unfriendly telephone conversations between Cahill and Griswold, the substance of which is not fully apparent from the record, Cahill met with Griswold at the Northwest plant. However, we find nothing in the record to support the view that either of these so-called conferences had any formal significance or was intended to be in substitution for the conference with respect to which reasonable notice of time and place is required by the provisions of section 403 (c) (1). It is manifest that the only manner in which a renegotiation proceeding may be commenced is that provided in said section, the requirements of which have already been set forth. This includes the requirement that the registered letter give to the contractor "reasonable notice of the time and place of a conference." See *Oregon Brass Works* v. *W. C. P. A. B.*, 16 T. C. 1145 (1951). That the letter of May 1, 1946, did not give such notice is not disputed. We find neither reason nor authority for disregarding such specific statutory standards or requirements.

The instant case is clearly distinguishable from *United States* v. *Wissahickon Tool Works*, (S. D., N. Y., 1951) 99 F. Supp. 331, affd. (C. A. 2, 1952) 200 F. 2d 936, where the usual letter informing the contractors of commencement of renegotiation proceedings referred to the fiscal year ended December 31, 1943, when the contractors' fiscal year in fact ended July 31, 1943. The court held that defendants' contention was "little more than a quibble," and that while the giving of a proper notice is a statutory prerequisite to the institution of renegotiation proceedings, under the circumstances there considered, the letter was sufficient notice. It was clear that the contractors had not been misled and the error did not involve any element which is set forth in the statute as one required to be included in the statutory notice of commencement. As applied to the facts of the instant case, however, the statute is clear and must be administered without judicial modification. If Congress had intended only that the contractor be given reasonable notice of commencement by registered mail, it could have so provided, but it saw fit to require specifically that the notice of commencement be *reasonable notice, by registered mail, of a time and place for conference* in respect to the renegotiation.

We next consider whether any valid notice of commencement was given within the statutory period for commencement, i. e., within 1 year after the contractor's report was filed with the Board. Petitioner first submitted its contractor's report for 1944 on May 4, 1945, but respondent contends that it was not then accurately completed, and accordingly cannot be considered as having been "filed" for the purpose of computing the statute of limitations on commencement at any time before July 3, 1946, on which date respondent concedes that the report was "filed" within the meaning of the statute. Petitioner argues that if the report was not "filed" on May 4, 1945, it was complete and accurate, and thus "filed" within the meaning of the statute and regulations promulgated thereunder, no later than February 11, 1946. Consequently, petitioner argues that the notice of April 21, 1947, was too late to commence renegotiation, whereas respondent considers it fully within the 1-year period from the time of completed filing on July 3, 1946. We will assume *arguendo* that the notice of April 21, 1947, in all respects meets the statutory requirements of section 403 (c) (1) in respect to a notice of commencement, and determine first whether or not it was transmitted within the statutory period for commencement.

The statute requires that the contractor file a financial statement in accordance with regulations promulgated thereunder specifying the form and detail of the information to be submitted. By appropriate regulations, petitioner was required to complete the applicable Standard Form of Contractor's Report by supplying all of the information

and exhibits specified therein. Filing of the form contractor's report so completed is deemed to have satisfied the statutory requirement in the absence of a notice of insufficiency sent to the contractor within 90 days.

Northwest prepared and submitted such a report on May 4, 1945, completed fully, except for certain data under section B required of contractors who have not received clearance notices for prior years. Petitioner believed that it had received such clearance for its fiscal year 1943, though, in fact, it had merely received a notice of cancellation which did not have the effect of discharging any of its liabilities. The record clearly shows, however, that any information which was called for in section B of the contractor's report for 1944 was submitted in part on November 14, 1945, and fully by February 11, 1946, as set forth in our Findings of Fact.

Renegotiation Regulation 222.1 (3) (a) provides in part as follows:

A "Standard Form of Contractor's Report" so prepared and filed will be deemed to constitute a sufficient compliance with the mandatory filing requirements of this section in the absence of a notice of insufficiency sent to the contractor 90 days after the report has been filed.

Respondent does not argue that a "notice of insufficiency" was sent to the contractor within the meaning of the regulation or that correspondence calling upon petitioner for additional information is to be construed as such a notice. We need only add, in this context, as already set forth, that the information which petitioner was called upon to furnish was actually furnished in the letters and accompanying enclosures submitted to Chicago P. A. D. on November 14, 1945, and February 11, 1946.

Upon consideration of all of the circumstances above set forth, we hold that petitioner's financial report was filed under section 403 (c) (5) of the Act no later than February 11, 1946.

Respondent's contention that petitioner's report was not completely and accurately filed until July 3, 1946, is based largely on the assertion that serious doubt then existed as to the accuracy of the information contained in the report in the light of the charges made by Bliss who had asserted that the accounts of Micromatic were incorrect and would reflect on the accounts of Northwest. Respondent also alleges that Griswold, petitioner's president, admitted that the reports were incorrect, and thereby revoked the filing of the financial statement, pending a complete audit, which was not submitted until at least July 3, 1946.

We do not think that the record supports respondent's view.

With respect to Griswold's alleged admission, the evidence submitted in support thereof is vague and inconclusive and does not

justify a finding that Griswold intended to revoke the filing of Northwest's contractor's report for 1944.

At the time when Bliss made the charges upon which respondent's other contention is based, Bliss was engaged in a bitter lawsuit with Griswold over Micromatic and was no longer an employee of Northwest. It is clear from the record that if the representatives of Chicago P. A. D. did not know this at the time the charges were made, they were so informed at the meeting of January 3, 1946. There is, therefore, no basis for respondent's contention that the representatives of Chicago P. A. D. reasonably relied on the Bliss charges on the theory that they were made by an agent of Northwest. Assuming that Chicago P. A. D. had believed the Bliss charges, however, it is our view that such belief would not, of itself, justify our holding that the contractor's report for 1944 was not filed within the meaning of the statute.

We are of the opinion that in the absence of any intentional or fraudulent misstatement of information in or omission from the contractor's report, respondent may not disregard the filing of the report and the data by which it was supplemented. The filing of the required report is only a preliminary step in the process of renegotiation. The appropriate authorities may determine from the information submitted that there *may* be excessive profits and then act to commence a renegotiation proceeding to determine what amount, if any, of excessive profits was realized. This does not, however, lead to the conclusion that the sufficiency of the report is to be measured by a requirement that it supply every detail of data and information which might ultimately be necessary to successfully complete a renegotiation proceeding before the period for commencement of such proceeding begins to run. It is evident that the purpose of the filing of the report is otherwise. The statute recognizes this by allowing one year from the date of filing in which to commence proceedings, and another year in which to complete them. It also provides that the renegotiation authorities may at any time, whether prior to commencement or during the course of a proceeding, request such additional information and data as is necessary to complete renegotiation. It is apparent that such provisions would be unnecessary and bare of practical significance if, as is contended here, a report complete and perfect in every detail were required of the contractor before the periods of limitations would begin to run. Moreover, the Board may, in the case of a recalcitrant contractor, or one who refuses to submit information as requested, issue a unilateral order on the basis of such information as is available. We think it clear under the circumstances that the function of the contractor's report was fully served no later than February 11, 1946, by the filing of the contractor's

report for 1944 on May 4, 1945, and the subsequent furnishing of the information missing from the original report. Since the later date is more than one year before April 21, 1947, the letter of April 21, 1947, is not to be deemed to have resulted in the timely commencement of the proceeding. It is, therefore, unnecessary to consider whether or not it complied with the statutory requirements for a notice of commencement.

Respondent argues that petitioner is estopped from asserting that the renegotiation proceeding was not timely completed. In view of our holding that the renegotiation proceeding was not timely commenced, as a result of which all of petitioner's liabilities for excessive profits are discharged under the statutory provisions of section 403 (c) (3), we need not consider an argument pertaining to timely completion of such a proceeding.

In view of our determination, we need not give consideration to petitioner's motion to strike with respect to evidence conditionally received over its objection.

Reviewed by the Court.

*Decision will be entered for the petitioner.*